1  ALEXANDER M. CHEMERS, CA Bar No. 263726
   zander.chemers@ogletree.com
2  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
4  Telephone:    213-239-9800
   Facsimile:     213-239-9045
5
   Attorneys for Defendant
6  CLEAN HARBORS ENVIRONMENTAL SERVICES,
   INC.
7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | DINO DE SANCTIS, AN INDIVIDUAL, ON   | Case No.  3:23-cv-5570
   | BEHALF OF HIMSELF AND ON BEHALF       |
12 | OF ALL PERSONS SIMILARLY              | **DEFENDANT CLEAN HARBORS**
   | SITUATED,                             | **ENVIRONMENTAL SERVICES, INC.'S**
13 |                                       | **NOTICE OF REMOVAL OF CIVIL**
   |              Plaintiff,                | **ACTION TO UNITED STATES DISTRICT**
14 |                                       | **COURT**
   |          v.                           |
15 |                                       | [Filed concurrently with Civil Cover Sheet;
   | CLEAN HARBORS ENVIRONMENTAL           | Certification of Interested Parties and Disclosure
16 | SERVICES, INC., A CORPORATION; AND    | Statement; Notice of Related Cases and
   | DOES 1 THROUGH 50, INCLUSIVE,         | Pendency of Other Action or Proceeding;
17 |                                       | Declarations of Linda Garcia, Ariel Kumpinsky,
   |              Defendants.               | and Alexander Chemers in Support of Removal]
18 |                                       |
19 |                                       | Complaint Filed:  August 3, 2023
   |                                       | Trial Date:        None
20 |                                       | _____
21
22
23
24
25
26
27
28

                                    1                    Case No. _____

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DINO DE SANCTIS AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Clean Harbors Environmental Services, Inc. ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendant states as follows:

## I.      THE STATE COURT ACTION

1.      On August 3, 2023, plaintiff Dino De Sanctis ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Contra Costa, which was assigned case number C23-01916 (the "State Court Action").

2.      The Complaint brings putative class claims for the alleged: (1) Unfair Competition in Violation of Business & Professions Code § 17200, *et seq*.; (2) Failure to Pay Minimum Wages in Violation of Labor Code §§ 1194, 1197, and 1197.1; (3) Failure to Pay Overtime Wages in Violation of Labor Code § 510; (4) Failure to Provide Required Meal Periods in Violation of Labor Code §§ 226.7, 512, and the Applicable Wage Order; (5) Failure to Provide Required Rest Periods in Violation of Labor Code §§ 226.7, 512, and the Applicable Wage Order; (6) Failure to Provide Accurate Itemized Statements in Violation of Labor Code § 226; (7) Failure to Reimburse Employees for Required Expenses in Violation of Labor Code § 2802; (8) Failure to Provide Wages When Due in Violation of Labor Code §§ 201, 202, and 203; and (9) Failure to Pay Sick Pay Wages in Violation of Labor Code §§ 201-204, 233, and 246.

3.      On September 27, 2023, Defendant received service of the Complaint, Summons, Civil Case Cover Sheet, Unlimited Jurisdiction Civil Actions Packet, and Notice of Assignment to Department 12 for Case Management Determination, through its registered agent for service of process. These documents were the initial pleadings received by Defendant setting forth the claims

upon which this action is based.  (Declaration of Alexander Chemers ("Chemers Decl."), ¶ 2.)  A true and correct copy of the Complaint served on Defendant is attached hereto as **Exhibit A** to this Notice of Removal.  True and correct copies of all other process, pleadings, and orders served on Defendant are attached as **Exhibit B** to this Notice of Removal.  (*Id.*, at ¶ 2.)

4.      In accordance with 28 U.S.C. Section 1446(a), Exhibits A and B represent the entirety of the process, pleadings, or orders served on Defendant in the State Court Action.

5.      Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).

6.      On October 26, 2023, Defendant timely filed and served its Answer to the Complaint in the Contra Costa County Superior Court.  A true and correct copy of the Answer is attached as **Exhibit C** to the Notice of Removal. (Chemers Decl., ¶ 4.)  Defendant has not served or been served with any other process, pleadings, or orders in this action other than Exhibits A through C to the Notice of Removal.  (*Id.*)

7.      <u>This Notice is Timely</u>.  This Notice of Removal is timely as it is filed less than one year from the date this action was commenced and within 30 days of service upon the Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

8.      Service of the Summons and Complaint on Defendant was effective September 27, 2023; because Defendant filed this removal within 30 days of service of the Summons and Complaint, removal is timely.

## II.      THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

9.      This action is one over which this Court has original jurisdiction under the Class Action Fairness Act ("CAFA") and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

## A.    The Size of the Putative Class Exceeds 100

10.    Plaintiff defines, generally, the members of the class to be "[a]ll individuals who are or previously were employed by DEFENDANT in California . . . and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint . . . ."  (Compl. ¶ 4.)

11.    Defendant's records show that more than 100 current and former employees fall within Plaintiff's proposed class.  (*See* Declaration of Linda Garcia ("Garcia Decl."), ¶¶ 4-5.)[1] Defendant's business records show that, during the period from August 3, 2019 to August 9, 2023, there were at least **2,241** Putative Class Members.[2]  (*See id.*)  Although Defendant denies that class treatment is appropriate, Plaintiff's proposed class, if certified, would consist of more than 100 members.

## B.    The Parties Are Diverse

12.    <u>Citizenship of Defendants</u>.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  The Supreme Court concluded that the "'principal

---

[1]    For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold); *Perea*, 2020 WL3989686, at *4.

[2]    Defendant's most recent list of putative class members includes current and former non-exempt hourly paid employees employed by Defendant in California for the period August 3, 2019 through August 9, 2023.  (Garcia Decl., ¶¶ 3-4.)

place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.*, at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

13. At all times on or after the date this action was filed, Defendant has been a citizen of the state of Massachusetts. (Garcia Decl., ¶ 2.) Defendant was, at the time of filing this action, and remains, a corporation incorporated under the laws of Massachusetts. (*Id.*) Defendant neither is incorporated in California, nor has a principal place of business in California. *See id.* Defendant's principal place of business is also Massachusetts. (*Id.*) Defendant's executive and administrative operations are managed from its Massachusetts headquarters. (*Id.*) Defendant's executive officers, including its Chief Executive Officer, Chief Financial Officer, Secretary, General Counsel and certain other executive leaders maintain their offices in Massachusetts, where they make and implement company-wide operating, financial and accounting, employee relations and other policy decisions. (*Id.*) Simply put, Defendant's center of "direction, control and coordination" is located in the State of Massachusetts. Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Massachusetts and not a citizen of California.[3]

14. <u>Citizenship of Plaintiff and Putative Class Members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

15. Plaintiff is a California citizen. (*See* Compl. ¶ 3.) Plaintiff alleges that he worked for Defendant in California at all times relevant to this action.[4] (*Id.*) Defendant's employment

---

[3] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

[4] Through this Removal, Defendant takes no position as to whether or not it employed Plaintiff, and it instead relies on Plaintiff's allegation that he and the Putative Class Members worked for Defendant.

1   records reflect that Plaintiff lived in the State of California, including the home address that

2   Plaintiff provided for payroll purposes.  (Garcia Decl., ¶ 7.)  Plaintiff was employed from

3   December 17, 2021 until August 3, 2022, as an hourly employee at a location in Pittsburg,

4   California.  (*Id*.)

5          16.     Members of the proposed class, who by definition are, or were, employed in

6   California, are presumed to be primarily citizens of the State of California.  *See, e.g.*, *Lew v. Moss*,

7   797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of

8   citizenship).  Thus, even if Plaintiff was somehow a citizen of Massachusetts (and there is no

9   evidence that he is), there is no possible way that the thousands of putative class members, all of

10  whom worked in California (Compl. ¶ 30), were also citizens of Massachusetts.

11         17.     Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C.

12  § 1332(d)(2) are met because Defendant is a citizen of Massachusetts while Plaintiff and/or other

13  Putative Class Members are citizens of California.

14         **C.     The Amount in Controversy Exceeds an Aggregate of $5,000,000**

15         18.     In order to remove a class action pursuant to CAFA, the amount in controversy must

16  exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of

17  evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."

18  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  To do so, the

19  removing defendant must "produce underlying facts showing only that it is *more likely than not*

20  that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead

21  in the Complaint."  *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL

22  1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

23         19.     In considering the evidence submitted by the removing defendant, a court must

24  "look beyond the complaint to determine whether the putative class action meets the [amount in

25  controversy] requirements," adding "the potential claims of the absent class members" and

26  attorneys' fees.  *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct.

27  1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir.

28  2007).  Furthermore, "[i]n considering whether the amount in controversy is clear from the face of

6                    Case No. _____
DEFENDANT CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

58926647.v2-OGLETREE

the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

20.    While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum.[5]  *See Guglielmino*, 506 F.3d at 700.

21.    As described further below, as well as in the declarations from Mr. Kumpinsky and Ms. Garcia, the amount in controversy exceeds the jurisdictional minimum of $5,000,000.[6]  *See Perea v. FedEx Ground Package Sys.*, Inc., No. 20-cv-00610-DMS-AHG, 2020 WL3989686, at *4 (S.D. Cal. July 15, 2020) (denying plaintiff's motion to remand and finding defendant's Managing Director of Human Resources Service Delivery provided admissible evidence supporting CAFA jurisdiction because "[g]iven Ms. Cox's position and her familiarity with defendant's business records and the applicable data, the court finds there is sufficient foundation for her personal knowledge as to the accuracy of the information presented").

### i.    Defendant's Estimate of the Amount in Controversy

22.    In determining the amount in controversy to support its Notice of Removal,

---

[5]    As shown by the Answer, Defendant denies Plaintiff's claims generally and also asserts various defenses.  This includes, for example, the existence of a previous class-action settlement that may serve to moot or minimize a variety of Plaintiff's claims.  For purposes of removal, however, what matters is not what Defendant contends, but rather what Plaintiff asserts through the operative Complaint.

[6]    The Court must disregard Plaintiff's contention the amount in controversy is less than $5,000,000.00.  (Compl. ¶ 4.)  *See Thompson v. Fastaff, LLC*, No. 2:22-CV-3584-SVW-MAA, 2022 WL 4109450, at *9 (C.D. Cal. Sept. 8, 2022) ("Plaintiffs may not escape a reasonable estimate simply by stating in their complaint that the claims will not exceed $5 million."); *Anderson v. Cindys Cleaning Servs. LLC*, No. CV204569PSGMRWX, 2020 WL 5057472, at *3 (C.D. Cal. Aug. 27, 2020); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928–29 (9th Cir. 2019) (generally providing that putative class representatives may not bind absent class members about the amount in controversy prior to certification); *Standard Fire Ins. Co.* 568 U.S. at 594.

Defendant relies here on a conservative estimate based only on damages sought by Plaintiff as a result of the alleged: (1) Failure to Pay Wages Including Overtime pursuant to Labor Code §§ 510 and 1194; (2) Failure to Provide Meal Periods pursuant to Labor Code §§ 226.7, 512, and IWC Wage Orders; (3) Failure to Provide Rest Periods pursuant to Labor Code §§ 226.7, 512; and (4) Failure to Pay Timely Wages pursuant to Labor Code § 203.

23.    Because the amounts in controversy for these four claims alone exceed the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other five causes of action as alleged in the Complaint.  Defendant further does not account for the amount placed into controversy by the Plaintiff's request for attorney's fees and costs (*see e.g.*, Complaint – Prayer for Relief, pgs. 46-48), even though such is properly considered for determining the amount in controversy for removal purposes.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).  That said, Defendant reserves the right to do so in opposition to any remand motion.

### a.  The Amount Placed in Controversy By the Failure to Pay Wages Including overtime Claim

24.    In his Third Cause of Action, Plaintiff alleges that Defendant failed to accurately pay overtime wages to Putative Class Members.  (Compl. ¶¶ 8, 78-92).  Plaintiff contends that Defendant "requires PLAINTIFF and CALIFORNIA CLASS Members to work without paying them for all the time they are under DEFENDANT's control."  (Compl. ¶¶ 8).  Plaintiff specifically alleges at Paragraph 8 of his Complaint the following with respect to his claims that Defendant failed to pay overtime wages:

- "DEFENDANT requires PLAINTIFF to work while clocked out during what is supposed to be PLAINTIFF's off-duty meal break."

- "DEFENDANT, as a matter of established company policy and procedure, administers a uniform practice of rounding the actual time worked and recorded by PLAINTIFF and CALIFORNIA CLASS Members, always to the benefit of DEFENDANT, so that during the course of their employment, PLAINTIFF and CALIFORNIA CLAS Members are paid less than they would have been paid had they been paid for actual recorded time rather than 'rounded' time."

- "DEFENDANT engages in the practice of requiring PLAINTIFF and CALIFONRIA CLASS Members to perform work off the clock in that DEFENDANT . . . required these employees to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into DEFENDANT's timekeeping system for the workday."

25.    Labor Code § 510 provides that any work in excess of eight hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Labor Code § 1194 (a) provides "Notwithstanding any agreement to work for a lesser wage, an employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation. . . ."

26.    Defendant denies Plaintiff's allegations that they failed to pay overtime wages to Plaintiff or the Putative Class Members; however, because Plaintiff has alleged a routine failure to pay overtime wages, improper rounding, and the miscalculation of overtime pay to Plaintiff and Putative Class Members, the Court should apply to the amount in controversy requirement an extremely conservative assumption of 1 hour of unpaid overtime wages during each workweek. (*See, e.g.*, Compl. ¶¶ 8-10.)  *Soto v. Grief Packaging, LLC*, (C.D. Cal. Mar. 8, 2018)  2018 WL 1224425, *3  (finding it reasonable to assume one hour of unpaid wages per employee per workweek where plaintiff alleged that defendant failed to pay him and the class members for all hours worked on a consistent and regular basis");  *Reyes v. Carehouse Healthcare Center, LLC*, (C.D. Cal. July 5, 2017) 2017 WL 2869499, *4  (defendant's estimate of one hour of unpaid overtime wages per workweek was reasonable where plaintiff alleged that defendants engaged in a "regular practice of willfully, unfairly and unlawfully" depriving plaintiff and the class members of compensation).

27.    Here, Plaintiff does not specify how much time he allegedly was not paid, but does contend that Defendant has implemented uniform set of policies and practices such that it "requires PLAINTIFF and CALIFORNIA CLASS Members to work without paying them for all the time they are under DEFENDANT's control."  (Compl. ¶ 8.)  It is therefore reasonable to assume one hour of unpaid overtime for the purposes of this Removal.

28.     Examining just a fraction of Plaintiff's putative class period[7], the average hourly rate of pay for the Putative Class Members was at least $25.43. (Declaration of Ariel Kumpinsky ("Kumpinsky Decl."), ¶ 7; Garcia Decl., ¶ 5.)

29.     During the period August 3, 2019 through February 2, 2022, the data analyzed for the purpose of this Removal, there were 21,939 weeks worked where the total hours worked by the Putative Class Member was over 40 hours. (Kumpinsky Decl., ¶ 7.)  Consequently, if any additional time was worked during one of those 21,939 weeks, it would necessarily be paid at the overtime rate since the employee had already worked 40 hours.

30.     Estimating conservatively by using the total weeks worked where the total hours worked were over 40 hours that week, 21,939 weeks, the amount placed in controversy for Plaintiff's unpaid overtime claim is in excess of **$836,863** (($25.43 x 1.5) x (21,939 weeks x 1 hour of overtime per week)). (*See id.*)

### b.  The Amount Placed in Controversy By the Failure to Provide Meal Periods Claim

31.     In his Fourth Cause of Action, Plaintiff alleges that Defendant failed to provide Putative Class Members with meal breaks or premium payment in lieu thereof. (Compl. ¶¶ 93-96.) Plaintiff further alleges the following with respect to his meal period claim:

- "DEFENDANT also engaged in the practice of rounding the meal period times to avoid paying penalties to PLAINTIFF and other CALIFORNIA CLASS Members." *Id.* at ¶ 11.

- "PLAINTIFF and other members of the CALIFORNIA CLASS therefore forfeit meal breaks without additional compensation and in accordance with DEFENDANT's corporate policy and practice." *Id.*

---

[7]     For the purpose of this Removal, Defendant's expert analyzed shift data for Putative Class Members during the period August 3, 2019 through February 2, 2022. (Garcia Decl., ¶ 8; Kumpinsky Decl., ¶ 4; Chemers Decl., ¶¶ 5-6.)  The total number of shifts worked by Putative Class Members in that more limited time frame was 182,395.  (Kumpinsky Decl., ¶ 8.)  The average hourly rate of pay for the putative class members who worked during this same time period was at least $25.43.  (Kumpinsky Decl., ¶ 5.)

- "DEFENDANT has the legal burden to establish that each and every CALIFORNIA CLASS Member was paid accurately for all meal and rest breaks missed as required by California laws. The DEFENDANT, however, as a matter of <u>policy and procedure</u> failed to have in place a policy or practice to ensure that each and every CALIFORNIA CLASS Member is paid as required by law. This common business <u>practice</u> is applicable to each and every CALIFORNIA CLASS Member." *Id.* at ¶ 33 (emphasis added).

32.    As such, Plaintiff's allegation is that Defendant regularly and frequently failed to provide each member of the putative class compliant meal periods throughout the putative class period.

33.    Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. Labor Code § 226.7(c). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

34.    When determining the amount placed in controversy by a plaintiff's meal period allegations, like those alleged by Plaintiff in the Complaint, an estimate of a 20% meal period violation rate is both reasonable and conservative. *See e.g., Chavez*, 2019 WL 1501576, at *3 ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods; collecting cases); *Phoung v. Winco Holdings, Inc.*, No. 2:21-CV-2033-MCE-JDP, 2022 WL 3636369, at *5 (E.D. Cal. Aug. 23, 2022) (denying remand; "the inclusion of language like "from time to time" and "often" further support defendant's "assumption of one missed meal break and one missed rest break per week to be reasonable"); *Oda v. Gucci Am., Inc.*, Nos. 2:14-CV-7468-SVW (JPRx), 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or

practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods and that not all rest periods were given timely); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC (BLM), 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) ("allegations of 'periodically' or 'from time to time' along with broader language of 'pattern and practice' and 'policy and practice' would support a violation rate under 25%"); *Salazar v. PODS Enters., LLC*, Case No. EDCV 19-260-MWF (KKx), 2019 WL 2023726 at *2-3 (C.D. Cal. May 8, 2019) (holding that an assumed 20% violation rate was conservative and reasonable where complaint alleged "pattern and practice" of meal and rest break violations that resulted in "occasional" inability to take meal and rest periods).

35.    Based on a review of Defendant's business records, during the period August 3, 2019 through February 2, 2022, the data analyzed for the purpose of this Removal, the Putative Class Members worked an aggregate of 173,116 shifts that exceeded six hours in length[8] and received an average hourly rate of at least $25.43.  (Kumpinsky Decl., ¶ 10; Garcia Decl., ¶ 6.)

36.    Based on a conservative analysis using a 20% violation rate and examining just a fraction of Plaintiff's putative class period, Defendant's calculation of Plaintiff's claim for failure to provide legally compliant meal periods is $880,467 ($25.43 x (173,116 shifts x 0.2)).

37.    The computation of the amount in controversy is based on conservative calculations that, during the period August 3, 2019 through February 2, 2022, the data analyzed for the purpose of this Removal, the Putative Class Members worked an aggregate 173,116 shifts that exceeded six hours in length, that there was a 20% meal period violation rate, and each Putative Class Member earned an average hourly rate of $25.43 during that time. (Kumpinsky Decl., ¶ 10; Garcia Decl. ¶¶ 6.)

38.    Consequently, the amount placed in controversy by the Meal Period Claim is

---

[8]    "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Labor Code § 512(a).  For purposes of this removal, Defendant conservatively estimated that mutual waivers were in place for all putative class members during the period August 3, 2019 through February 2, 2022, the data analyzed for the purpose of this Removal, and thus considered only shifts exceeding six hours.

1  **$880,467.**  (*See id.*)

2                       **c.  The Amount Placed Into Controversy by the Failure to Provide Rest**

3                           **Periods Claim**

4        39.    In his Fifth Cause of Action, Plaintiff alleges that Defendant failed to provide

5  Putative Class Members rest periods as required by Cal. Labor Code § 226.7.  (Compl. ¶¶ 97-100.)

6  Plaintiff further alleges the following with respect to his rest period claim:

7        • "DEFENDANT's policy restricted PLAINTIFF and other CALIFORNIA CLASS

8            Members from unconstrained walks and is unlawful based on DEFENDANT's rule

9            which states PLAINTIFF and other CALIFORNIA CLASS Members cannot leave

10           the work premises during their rest period."  *Id.* at ¶ 12.

11       • "DEFENDANT did not have a policy or practice which provided timely off-duty

12           meal and rest breaks to PLAINTIFF and also failed to compensate PLAINTIFF for

13           PLAINTIFF's missed meal and rest breaks."  *Id.* at ¶ 27.

14       • "DEFENDANT has the legal burden to establish that each and every CALIFORNIA

15           CLASS Member was paid accurately for all meal and rest breaks missed as required

16           by California laws.  The DEFENDANT, however, as a matter of policy and

17           procedure failed to have in place a policy or practice to ensure that each and every

18           CALIFORNIA CLASS Member is paid as required by law.  This common business

19           practice is applicable to each and every CALIFORNIA CLASS Member."  *Id.* at ¶

20           33 (emphasis added).

21       • "PLAINTIFF, like all the other members of the CALIFORNIA CLASS, was

22           classified as a non-exempt employee paid on an hourly basis who was subjected to

23           DEFENDANT's deceptive practice and policy which failed to provide the legally

24           required meal and rest periods to the CALIFORNIA CLASS and thereby underpaid

25           compensation to PLAINTIFF and the CALIFORNIA CLASS."  *Id.* at ¶ 36(c).

26       • "[Putative class members] from time to time were denied their first rest periods of

27           at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours,

28           a first and second rest period of at least ten (10) minutes for some shifts worked of

between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more from time to time.  PLAINTIFF and CALIFORNIA LABOR SUB-CLASS Members were also not provided with one hour wages in lieu thereof." *Id.* at ¶ 98.

As such, Plaintiff's Complaint alleges regular rest period violations as a matter of Defendant's purported policy and practice.  *Id*. at ¶¶ 12, 27, 33, 36.

40.      Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater.  *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012).  Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided.  *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011).  Rest period claims are properly considered in determining the amount in controversy.  *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

41.      When determining the amount placed in controversy by allegations like those alleged by Plaintiff, a 20% violation rate that is uniformly applied across all members of the putative class period is both reasonable and conservative.  *See, e.g., Chavez*, 2019 WL 1501576, at *3; *Phoung*, 2022 WL 3636369, at *5; *Oda*, 2015 WL 93335, at *5; *Cavada*, 2019 WL 5677846, at *7; *Salazar*, 2019 WL 2023726 at *2-3.

42.      Based on a review of Defendant's business records, the Putative Class Members worked an aggregate of 180,160 shifts exceeding 3.5 hours in length, during the period August 3, 2019 through February 2, 2022, the data analyzed for the purpose of this Removal, and earned an average hourly rate of $25.43 during that time.  (Kumpinsky Decl., ¶ 9; Garcia Decl. ¶ 6.)

43.      Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant rest periods is at least **$916,293** ($25.43 x (180,160 shifts x 0.2)).  The computation of the amount in controversy is based on conservative estimate that, during the period August 3, 2019 through February 2, 2022, the data analyzed for the purpose of this Removal, the Putative Class Members worked an aggregate of 180,160 rest-break eligible shifts, there was a 20% rest break violation rate, and that the Putative Class Members

1    earned an average hourly rate of $25.43 per hour.  (Kumpinsky Decl., ¶¶ 5, 9; Garcia Decl. ¶¶ 6.)

2        44.    Consequently, the amount placed in controversy by the Rest Period Claim is at least

3    **$916,293**.

4        **d.  The Amount Placed in Controversy by the Failure to Timely Pay**

5            **Wages Upon Separation**

6        45.    Plaintiff's Eighth Cause of Action alleges that the "employment of PLAINTIFF and

7    many CALIFORNIA LABOR SUB-CLASS Members has terminated and DEFENDAT has not

8    tendered payment of all wages owed as required by law."  (Compl. ¶ 115.)  In fact, while Plaintiff

9    states that "many" of the Putative Class Members were owed wages so that he can later claim that

10   the number is uncertain and thus removal improper, Plaintiff's underlying factual allegations make

11   it clear that Plaintiff is seeking waiting time penalties on behalf of all Putative Class Members

12   whose employment ended.

13       46.    For example, Plaintiff contends that "DEFENDANT, as a matter of established

14   company policy and procedure, administers a uniform practice of rounding the actual time worked

15   and recorded by PLAINTIFF and CALIFORNIA CLASS Members, always to the benefit of

16   DEFENDANT, so that during the course of their employment, PLAINTIFF and CALIFORNIA

17   CLAS Members are paid less than they would have been paid had they been paid for actual

18   recorded time rather than 'rounded' time."  (Compl. ¶ 8.)  Consequently, if Defendant had a

19   "uniform practice of rounding" that was "always to the benefit of" Defendant this necessarily

20   means that all Putative Class Members "during the course of their employment . . . are paid less

21   than they would have been paid . . . ."  (*Id.*)  And there are various other additional theories on

22   which Plaintiff claims that Defendant failed to pay wages, including meal and rest premiums,

23   overtime, and paid sick leave to Putative Class Members during their employment.

24       47.    Defendant denies that it failed to timely pay Plaintiff or the Putative Class Members

25   at the time of separation from Defendant's employment.  Under Labor Code section 203, however,

26   "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who

27   quits, the wages of the employee shall continue as a penalty from the due date thereof at the same

28   rate until paid . . . but the wages shall not continue for more than 30 days."  Cal. Lab. Code §

203(a).  A three-year statutory period applies to Plaintiff's claim for waiting time Penalties. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

48.    Because Plaintiff alleges that the unpaid wages was an "issue . . . common to the CALIFORNIA LABOR SUB-CLASS and will apply to every member of the CALIFORNIA LABOR SUB-CLASS" (Compl. ¶ 46(c)), it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate.  *See Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "regularly required" Putative Class Members to work off-the-clock without compensation, and the defendants estimated that each Putative Class Member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of plaintiff's allegation that members of the putative class "routinely" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

49.    During the period since August 3, 2020 through the present, at least 886 Putative Class Members have been identified as former employees, with an average hourly rate of at least $25.43.  (Garcia Decl., ¶ 5.)

50.    Based on Plaintiff's allegations that he and the Putative Class Members were required to work off-the-clock, were underpaid due to a Defendant's failure to accurately calculate employees' regular rates, were subject to an unlawful and one-way rounding policy, were denied meal and rest break pay premiums, and that Plaintiff and the Putative Class Members were not timely paid these wages upon separation from Defendant employment, Plaintiff claims that all Putative Class Members are entitled to waiting time penalties.

51.    Given there are a number of causes of action in the Complaint that could potentially trigger a waiting time penalty, assuming each terminated Putative Class Member would have at

least one instance, of all those alleged by Plaintiff, that would trigger the waiting time penalty, and further assuming that each Putative Class Member regularly worked 8 hours per day and calculating 30 days at the average hourly rate of $25.43, the total estimated potential waiting time penalties in controversy amount to at least **$5,407,435**.  ($25.43 x 8 hours x 30 days x 886 terminated Putative Class Members.)  (Kumpinsky Decl., ¶ 11; Garcia Decl., ¶ 5.)

52.    Consequently, the amount placed in controversy by the Failure to Pay Wages at Separation Claim is at least **$5,407,435**.

**e.  Summary of Defendant's Calculations**

53.    As described above, a conservative estimate of the amount in controversy presented by Plaintiff's overtime, meal period, rest period, and waiting time penalty claims considerably exceed the jurisdictional minimum of $5,000,000.  This is true even though Defendant's analysis focused on shifts and weeks worked in the period through February 2, 2022, and despite there being an additional eighteen months of liability pursued by Plaintiff between February 2, 2022 and the present.[9]  These four claims alone have placed at least  **$8,041,058** in controversy, summarized as follows:

| Claim | Estimated Exposure |
|---|---|
| Overtime Claim | $ 836,863 |
| Meal Period Claim | $ 880,467 |
| Rest Period Claim | $ 916,293 |
| Waiting Time Penalty Claim | $ 5,407,435 |
| **Sub-Total** | **$ 8,041,058** |

54.    Consequently, the amount placed in controversy by just four of Plaintiff's eight claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

---

[9]    Due to the challenges in retrieving and analyzing data in the thirty-day removal period, Defendant could not perform these same detailed calculations for the entire proposed liability period, but will do so if requested by the Court or in response to any challenge to the Court's jurisdiction.

#### f.  Further Data

55.     For purposes of this removal, the above calculations are more than sufficient to support the required $5 million threshold amount in controversy.  Plaintiff further alleges under his Seventh Cause of Action that Defendant failed to reimburse him and Putative Class Members for necessary business expenses.  (Compl., ¶¶ 105-108.)  To the extent that Plaintiff is alleging that Defendant failed to reimburse him and Putative Class Members for such business-related expenses (*e.g*., cell phone use and fuel), there is an even greater amount in controversy.  *See, e.g., Vallejo v. Sterigenics U.S., LLC,* No. 320CV01788AJBAHG, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving assumption each employee incurred only cell phone expenses of $25 per month, or $300 per year, where plaintiff provided no details regarding the total expenses).

56.     Plaintiff also seeks recovery on behalf of his proposed class for recovery of damages and penalties under his his Sixth Cause of Action for Failure to Provide Accurate Wage Statements, and his Eighth Cause of Action for restitution pursuant to California Business & Professions Code section 17200, *et seq*.

57.     As alleged, the amount in controversy clearly exceeds the requisite threshold.

#### g.  Attorney Fees

58.     Based on the above, Defendant has demonstrated there is at least **$8,041,058** in controversy.

59.     Plaintiff also seeks to recover attorneys' fees in connection with the above claims. (Compl.– Prayer for Relief, pgs. 46-48.)  In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases.  *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013).  Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA.  *Id*. (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV160105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc*., No. CV-1501350ABPLAX, 2015 WL

12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same). "[W]hen a statute or contract provides for the recovery of attorney fees, prospective attorney fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott, supra*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 889 F.3d 785, 794 (9th Cir. 2018).

60.    Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is $10,051,322: ($8,041,058 x .25 = $2,010,264).

## III.    DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

61.    <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Contra Costa is located within the Northern District of California.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

62.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

63.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Contra Costa.  Notice of compliance shall be filed promptly afterward with this Court.

64.    As required by Federal Rule of Civil Procedure 7.1, Defendant has concurrently filed a Certificate of Interested Parties and Disclosure Statement.

65.    Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

/ / /

/ / /

/ / /

/ / /

/ / /

1    WHEREFORE, Defendant removes the above-captioned action to the United States District

2 Court for the Northern District of California.

3

4 DATED:  October 27, 2023                    OGLETREE, DEAKINS, NASH, SMOAK &
                                              STEWART, P.C.
5

6

7                                             By:  /s/ Alexander M. Chemers
                                                   Alexander M. Chemers
8

9                                             Attorneys for Defendant
                                              CLEAN HARBORS ENVIRONMENTAL
10                                            SERVICES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28